IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:09-CR-6-2-BR

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| ROBERT AUSTIN HALL ) | |

This matter is before the court on defendant's amended second motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), (DE # 102), and *pro se* motion for judicial recommendation of residential reentry center ("RRC") placement, (DE # 110).

## I.   BACKGROUND

In 2009, pursuant to a plea agreement, defendant pled guilty to theft of firearms and aiding and abetting the same; dealing in firearms without a license and aiding and abetting the same; and transporting firearms while under indictment. The court sentenced him to the top of the applicable guideline range, a total term of 108 months imprisonment, to run consecutively to any other sentence defendant was serving. At the time, he was serving a state term of imprisonment for second degree murder. Defendant did not appeal.

In May 2020, defendant filed his initial motion for compassionate release, (DE # 77), and, pursuant to Standing Order No. 19-SO-3 (E.D.N.C. Jan. 25, 2019), the court appointed counsel to represent him for purposes of such a motion, (5/29/20 Order, DE # 79). The court denied that initial motion without prejudice to defendant refiling the motion after exhausting his administrative remedies. (9/1/20 Order, DE #83.) In November 2020, defendant, with the assistance of court-appointed counsel, filed a second motion for compassionate release. (DE #

93.) Because most of the information necessary for the court to resolve the motion was missing, the court permitted defendant to amend the motion. (1/4/21 Order, DE # 95.)

In February 2021, defendant, again with the assistance of court-appointed counsel, filed the instant amended motion with supporting exhibits.[1] The government filed a response in opposition. (DE # 105.) In response to the court's order, the government filed defendant's sentence computation and inmate discipline data. (DE # 106.) Recently, because of the length of time that has passed since the government filed that data and because the Bureau of Prison's ("BOP") website indicates defendant's projected release date has changed, the court ordered the government to file updated data, (1/21/22 Text Order), which it did, (DE # 111).

In the meantime, defendant filed his *pro se* motion to which the government did not file a response.[2]

## II. DISCUSSION

A. <u>Motion for Compassionate Release</u>

First, defendant seeks a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018 ("First Step Act").[3] That statute provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>   (1) in any case—
>     (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

---

[1] Because this amended motion supersedes the second motion for compassionate release, the Clerk is DIRECTED to terminate the second motion.
[2] Counsel was not appointed for this motion.
[3] The First Step Act amended § 3582(c)(1)(A) to permit a defendant to bring such a motion. See Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).

> warden of the defendant's facility, whichever is earlier, may reduce
> the term of imprisonment . . . , after considering the factors set forth
> in section 3553(a) to the extent that they are applicable, if it finds
> that—
>> (i) extraordinary and compelling reasons warrant
>> such a reduction . . .
>> and that such a reduction is consistent with applicable
>> policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

The Sentencing Commission has not issued a policy statement applicable to motions filed by defendants under this statute.[4] United States v. McCoy, 981 F.3d 271, 275 (4th Cir. 2020). "[A]s a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" Id. at 284 (citation omitted) (emphasis added).

In deciding whether a sentence reduction is appropriate, the court must also consider the applicable § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A).

> Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner."

United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (citing 18 U.S.C. § 3553(a)).

Here, the government initially opposes defendant's motion on the ground that defendant failed to exhaust his administrative remedies before filing the motion because his request to the Warden was for home confinement under the Coronavirus Aid, Relief, and Economic Security

---

[4] The policy statement contained in U.S.S.G. § 1B1.13 "addresses only BOP-filed motions." United States v. High, 997 F.3d 181, 186 (2021). Nonetheless, it "'remains helpful guidance even when motions are filed by defendants.'" Id. (quoting McCoy, 981 F.3d at 282 n.7). Relevant here, "[w]ith respect to medical conditions, [extraordinary and compelling] reasons include that 'the defendant is suffering from a terminal illness' or 'the defendant is . . . suffering from a serious physical or medical condition.'" Id. (quoting U.S.S.G. § 1B1.13 cmt. 1(A)(i), (ii)) (alterations omitted).

Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), rather than for compassionate release under § 3583(c)(1)(A).  (Resp., DE # 105, at 16.)  Because this threshold requirement is non-jurisdictional, United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021), the court does not resolve the issue and proceeds to examine the merits of defendant's motion.

Defendant requests that the court reduce his sentence to time served based on his age, his health, COVID-19, and the amount of time he has served.  (Am. Mot., DE # 102, at 3-4, 5-8.) He argues his low rate of recidivism, post-sentencing conduct, and release plan favor such a reduction.  (Id. at 4-5.)  In response, the government claims defendant has not demonstrated sufficient reasons to justify a sentence reduction.  (Resp., DE # 105, at 17-19.)  Moreover, it contends, defendant's criminal history, the nature and circumstances of the instant offenses, and the efforts BOP is undertaking to protect inmates from COVID-19 weigh against defendant's release.  (Id. at 20-22.)

"COVID-19 raises medical issues in the prison context that are particularly serious — it is highly communicable; it is aggravated by certain other medical conditions; and it can be lethal."  High, 997 F.3d at 185.  "[I]n considering whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, [district courts] have considered the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility."  United States v. Kibble, Criminal Action No. 2:19-00077, 2020 WL 3470508, at *2 (S.D.W. Va. June 25, 2020) (citing United States v. Brady, No. S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (collecting cases)), aff'd, 992 F.3d 326 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021).  The Centers for Disease Control and Prevention's ("CDC") list of risk factors for

4

COVID-19 complications also informs the court's evaluation. Everett v. United States, No. 4:16cr35, 2020 WL 5793428, at *3 (E.D. Va. Sept. 25, 2020).

Defendant is 39 years old and obese.[5] He has spinal issues, (see, e.g., Am. Mot., Ex. 5, DE # 102-6, at 7, 15), which, according to defendant, result in "chronic pain[] and difficulty moving," (id., DE # 102, at 3). However, he does not have any functional limitations, (id., Ex. 5, DE # 102-6, at 7), and a review of his medical records confirms the spinal issues have not impacted his ability to successfully function within the prison setting. Defendant tested positive for COVID-19 in late May 2020, (id., Ex. 4, DE # 102-5, at 5), and was generally asymptomatic, (see id., Ex. 2, DE # 102-3, at 5-12, Ex. 3, DE # 102-4, at 2-17, Ex. 4, DE # 102-5, at 2).

Defendant's obesity increases his risk of getting severely ill from COVID-19. See CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 28, 2022). But, his age does not. See CDC, COVID-19 Risks and Vaccine Information for Older Adults, https://www.cdc.gov/aging/covid19/covid19-older-adults.html ("Older adults are more likely to get very sick from COVID-19. . . . The risk increases for people in their 50s and increases in 60s, 70s, and 80s.") (last visited Jan. 28, 2022).

Although defendant previously had COVID-19, the possibility of reinfection remains. See CDC, Reinfections and COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Jan. 28, 2022). At FCI Terre Haute, where defendant is currently incarcerated, 25 inmates and 18 staff are currently positive for COVID-19. BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Jan. 28, 2022). These figures

---

[5] Defendant's earlier medical records confirm obesity. (See, e.g., Am. Mot., Ex. 8, DE # 102-9, at 7-8.) However, more recent records do not indicate he is obese. (See, e.g., id., Ex. 4, DE # 102-5, at 17.) Because the government does not discuss any of defendant's medical conditions, other than his testing positive for COVID-19, (see Resp., DE # 105, at 19), the court assumes defendant is obese.

represent an increase in the infection rate over the past month. Cf. United States v. Porter, No. CR 18-68, 2021 WL 5989142, at *4 (W.D. Pa. Dec. 17, 2021) (stating, as of 17 December 2021, "the BOP reports that there is currently one positive case among the inmate population and six among staff population" at FCI Terre Haute (citation omitted)). Approximately 86% of the inmates at the entire Terre Haute complex are fully inoculated.[6] BOP, COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/ (last visited Jan. 28, 2022).

In addition to relying on his age, his health, and COVID-19 to show extraordinary and compelling reasons for a sentence reduction exist, defendant relies on the length of time he has served. Defendant is correct that he "has been in continuous custody for over 10 years." (Am. Mot., DE # 102, at 4.) However, he did not enter federal custody and begin serving his sentence for the instant offenses until April 2016—once he completed his state sentence for the unrelated offense of second degree murder. (See Resp., Ex. 1, DE # 111-1, at 2 (showing sentence computation date began 17 April 2016).) See also https://www.ncdps.gov/dps-services/crime-data/offender-search (search by offender name) (showing defendant was released from state custody on 17 April 2016). He therefore has served almost six years of this sentence, or 75% with good time credit.

Considering collectively the grounds defendant raises, the court concludes he has failed to show that extraordinary and compelling reasons warrant a reduction in his sentence to time served. Even assuming he had made such a showing, the court further concludes the § 3553(a) factors do not support reducing his sentence.

Prior to his conviction for the instant offenses, defendant had been convicted in state court of four felonies: second degree murder, possession with intent to sell/deliver cocaine,

---

[6] Defendant's vaccination status is not known.

larceny of a firearm, and breaking and entering. (See PSR, ¶¶ 20, 22-23.) The instant offenses involve defendant and his co-defendant breaking into residences and stealing a total of 32 firearms and other personal property. (Id. ¶¶ 9-11.) Defendant sold 18 of the firearms to a convicted felon and exchanged others for controlled substances. (Id. ¶¶ 9-10.) One of defendant's victims opposes his release. (Resp., DE # 105, at 2 n.1.)

During the nearly six years he has been federally incarcerated, he has taken programming, obtained his GED, and worked as an orderly with an "excellent" rating. (Am. Mot., DE # 102, at 5; see also id., Ex. 2, DE # 102-3, at 2.) He has had one disciplinary infraction, in December 2016, (Resp., Ex. 2, DE # 111-2), for an act of moderate severity, see 28 C.F.R. § 541.3, Table 1 (2022). According to defendant, upon release, he plans to live with a cousin in Pennsylvania and has community support. (Am. Mot., DE # 102, at 5.) Defendant claims "his age places him in the class of prisoners *least* likely to recidivate." (Am. Mot., DE # 102, at 4 (citation omitted) (emphasis added).) To the contrary, defendant being 39 years old makes it *more* likely than not he will recidivate. See United States Sentencing Commission, The Effects of Aging on Recidivism of Federal Offenders, at 22 (Dec. 2017) (showing offenders 30 to 39 years old with a rearrest rate of 53.6%, the second highest), https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.

Given defendant's criminal history and the nature and circumstances of the instant offenses, the court concludes reducing defendant's term of imprisonment to time served would not reflect the seriousness of the offenses, provide just punishment, or deter crime.

The court will deny defendant's amended second motion for compassionate release.

B.  Motion for Judicial Recommendation of RRC Placement

Second, defendant requests that the court recommend to the BOP his placement in a RRC to serve the remaining 9 to 12 months of his custodial sentence. (Mot., Attach. 1, at 6.)

> A solid majority of federal district courts throughout the country, including courts in this circuit, have concluded that a sentencing court may make imprisonment placement recommendations on a defendant's post-sentencing motion. See United States v. Smith, 2019 WL 4016211, at *3 (W.D. Va. Aug. 26, 2019); United States v. Patterson, 2019 WL 127962, at *2 (E.D. Va. Jan. 8, 2019). Courts have drawn this conclusion from the Second Chance Act, which provides that, in designating the place of an inmate's imprisonment, the BOP shall consider "any statement by the [sentencing] court . . . recommending a type of penal or correctional facility as appropriate." 18 U.S.C. § 3621(b)(4)(B).

United States v. Kenney, No. CR 1:17-00195-004, 2020 WL 261237, at *1 (S.D.W. Va. Jan. 16, 2020) (alteration and omission in original).

Based on his positive post-sentencing conduct and the fact he is now classified as a minimum-security level inmate, (see Mot., Attach. 2, DE # 110-2, at 6), the court believes defendant's placement in a RRC would be beneficial to him, the public, and the victims. Such placement would promote defendant's successful return to society, reduce his likelihood of recidivism, and assist him with finding stable employment to pay the restitution he still owes to the victims. The court will allow defendant's motion for a recommendation of RRC placement, recognizing that this recommendation is non-binding on the BOP.

### III.  CONCLUSION

Defendant's amended second motion for compassionate release is DENIED. For the record, the Clerk is DIRECTED to file defendant's presentence report under seal.

Defendant's motion for a judicial recommendation of RRC placement is ALLOWED. The court recommends that the BOP approve defendant for placement in a RRC for at least six

months. Counsel for the government is DIRECTED to serve a copy of this order on the appropriate division of the BOP.

This 31 January 2022.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　W. Earl Britt
　　　　　　　　　　　　　　　　　　Senior U.S. District Judge